We have four cases this morning, all with the same appellant, two involving one patent and two involving another, and they overlap a bit. And we, with all the issues that have been essentially decided and waived, we ask you to please be very clear on what it is that we do need to decide. So the first case is v. Incorporated v. Cisco Systems, 2022-2234. Mr. Kinnaird? Thank you, Your Honor. Stephen Kinnaird for VernetX. On a prior appeal, this Court held that the PTAB could only sustain the examiner's rejection of Claim 5 of the 504 patent if it found that Lendedman Cell Directory Service, or CDS, uses a remote procedure call, or RPC. The Board so found on remand that that finding lacks both substantial evidence and adequate explanation. And the Board's fundamental error was failing to recognize that a CDS query and an RPC are two different types of communication, even though an RPC client can make both. And the reason that they're not the same is that a CDS query lacks the required element of binding between the client and target server. And instead, a CDS query is a precursor communication that enables an RPC by supplying the binding information. So Lendedman never describes a CDS query as an RPC because it cannot be. The Board at Appendix 5 relied only on two sets of propositions from Lendedman. First, broad statements in Lendedman's introduction about system architecture. And second, statements that the RPC runtime, which is the operating system of an RPC client, can search for information on target servers in the directory service. Now the claim recites using a cryptographic technique. That's correct. Isn't it correct that an RPC is a cryptographic technique? A cryptographic technique can be used in an RPC, but only after the client receives the binding information for the server, the binding information as a network address, and certain other information. Because what the examiner relied on as the cryptographic technique is the challenge from the target server to the client to say whether or not they can undo the encryption. So that can't happen before there's binding information that's supplied by the CDS. Your Honor, as far as the statements that the Board relied on, they relied, and you can find these at Appendix 4461, on statements in Lendedman that quote, and the directory service is quote, based upon the data sharing model. But those are not categorical statements that every form of data sharing communication, including a CDS query, is RPC. And indeed, on the same page, Lendedman teaches that different mechanisms handle an RPC and a CDS query. And it says at 4461 that quote, any machine that wishes to have access to the function provided by the CDS must also run the client program CDS clerk. So every machine in the system, including an RPC runtime, has to look up in the same way using the client program. I guess what I'm trying to figure out is the Board relied on statements from Lendedman that expressly talk about using something called RPC runtime in order for a client to search for the binding information, location of servers in the CDS server. And the Board also cited two other parts of Lendedman which show that you do this using some kind of RPC commands. I mean, I'm not going to spell out what those specific commands are, but there's a couple different RPC commands for a client to communicate with a CDS server in order to find these target servers. And I guess I didn't see your blue brief really reckon with those statements in Lendedman and explain away why RPC runtime, these RPC commands that are being cited and relied upon by the Board, cannot be the use of RPC itself to communicate between the client and the CDS server. I think we did, Your Honor. Can you show me where it did? Yes. Well, we talked about where, and I'll try to find the exact pages, where it says that the CDS is involved in RPC, but it never says that the query itself. I did see you say the CDS server is involved in RPC, but I didn't see you actually tackle the statements that the Board relied upon from Lendedman about RPC runtime and then those RPC commands. Well, I think we did in page 17, for example. We quoted the, and this is something that's repeated throughout Lendedman. And we quoted in the middle of the page there, to establish the actual connection, the client needs a server binding handle, which it gets from the CDS. In that 4640, it says the client process needs a binding handle to execute an RPC call. And this goes to the fundamental concept of what a remote procedure call is. So the idea of a remote procedure call is that you're going to... I guess my question is, why is RPC runtime not RPC? The RPC runtime is the operating system of an RPC client, and it does functions other than simply issuing and executing the RPC call. And you can see this at appendix 4631-32, which is actually where the Board got one of its statements. So if you look there, 10.22, and it explains 4631-32, five different functions that the RPC runtime does. The first of these is the RPC. This is the communication operations. Once you have the binding information, where you do the data transfer between client and server. Separately is bullet two, which is the directory service searches. I'm not going to try to learn Lendedman right now. I'm just trying to understand what your argument was in your brief. And what was it that you said in your brief that broke apart conceptually this thing called RPC runtime from RPC? Why RPC runtime can't be RPC, and why it's unreasonable for the Board to have relied on these citations and discussions of RPC runtime as well as the RPC commands? Because what the... I'm looking for it in the blue brief. Okay. What we argued... We argued at 14 that the Board simply pointed to several passages that demonstrate... Is this page 14 that you said? Blue brief of 14. Right, okay. And say that the Board did not consider other portions of Lendedman that demonstrate that it is only after the request of the CDS has already been made that the RPC is actually executed. And so... And we go on and talk about that more. That's in the summary. And then in 17, we talk about here are the things that the Board said, but... And we say that the CDS enables the RPC model to work, but that has nothing to do with whether Lendedman uses RPC when sending a query to Lendedman's CDS. And then we talk about... And I think this is important. At the very end there, one of the Board's things, what it said is the RPC runtime can be used to store and search for the location of servers, binding information, parentheses, in the directory service. So if an RPC, as we say, above that in 17, where we said to establish the actual connection, the client needs a server binding handle. Server binding information is maintained in CDS, as well in the endpoint map and the RPC runtime of the server machine. So what we're saying is that if you're searching for the server information, the target information, the binding information, that you need to have an RPC call. And at 46.26, 46.38, 46.40, Lendedman says you need that binding handle to do an RPC call. So it's just a prerequisite. And I think the court can see this probably most clearly. And we discussed this graphic in the briefs. I'm not sure if it's in the fly brief or the blue brief offhand. But if you would turn to 46.43 to 44, you see what are the steps to do RPC call routing. The first is looking up a binding in CDS. And so that's where you send a request to the local CDS client, which is the one that will check its cache. This is described in Section 2, by the way, a completely different section from 10 on RPC. So the CDS client, which, clerk rather, would check its cache. And if it's not there, it sends a standard DNS query to the CDS server to get the name information. And this is all because you need the binding handle, right? And what you usually get, as Lendedman explains, is a partial binding handle. And then step two is the client will select a binding handle and issues the RPC call. You don't even issue the RPC call until you have a binding handle. And then step three is once you have the fully bound handle, because you need the endpoint, the client's RPC runtime then directly calls the server process listening to the endpoint. That's the execution of the RPC call. And that is what is essential to the concept of a remote procedure call. So what a remote procedure call does, as Lendedman explains, is it simulates the target's local procedure call. But instead of the target calling on the local procedures, the routine and its direct address space, the remote client does that. And it can only do that if the remote client binds to the target. And that's why the query, which its only function is to get the binding information, cannot be an RPC. You are in your rebuttal time. You can save it. I'll save it. Thank you, Your Honor. Mr. Erickson. May it please the court, Adam Erickson for Cisco. The board found the client and the CDS communicate through RPC, and that finding is supported by substantial evidence. They cited multiple passages of Lendedman that show that that communication is performed through RPC. Just to name a few, they cite to appendix 4461, which is Lendedman page 9, which says the CDS is based upon the data sharing model, which is built upon RPC. They similarly cite to appendix 4631, which is page 178 of Lendedman, which says the client's RPC runtime can be used to search for the location of servers in the CDS. And the board explained that each of these passages, as well as a host of others, show that, quote, Lendedman uses the RPC mode of communication between the user and the CDS. And again, these passages are more than enough to satisfy the substantial evidence standard to review. However, Vernetix's argument, in its briefs at least, cite to a single passage of Lendedman, which is appendix 4643, and they argue that this contradicts all of the passages cited by the board. It would be inappropriate for this court to reverse or remand for at least two reasons, and that is, even if Vernetix's interpretation of Lendedman were correct, the possibility of drawing two inconsistent conclusions from the evidence does not preclude an agency's finding from being supported by substantial evidence. And second, Vernetix's interpretation of the passage it cites is not actually correct and is not supported by Lendedman. For these reasons, Cisco asks this court to affirm, and I welcome any questions from the court. Why don't you engage with Mr. Kinnaird's argument that the RPC doesn't come into effect until after the first stage? Sure. So this is, again, this is based on appendix 4643, and there are three steps involved in communicating between the application client host and the application server host. Step one is looking up a binding in the CDS. So as opposing counsel explained, first the application client host needs an address of the server it intends to contact, and it receives that address at step one. But the issue with Vernetix's argument is that they fail to acknowledge that appendix 4643, this page here, is not the only place that step one is described. So even though step one here doesn't necessarily say either way that this is completed through RPC, doesn't mention RPC, doesn't say it's not performed through RPC, again, there are multiple other passages in Lendedman that describe that same step. What's the best passage that you have that specifically addresses this point of the sequencing of events? Sure. So again, referring to appendix 4631, which is on Lendedman 178, it says the client's RPC run time is used to search the location of servers in the CDS. Another one is appendix 48. Where exactly on 4631 are you? The bottom? Sure. The bottom bullet. Yes, that's the very bottom. The last bullet? Yes, that's correct. I see. And in that same section it says, so that was the first sentence, the RPC run time can be used to store and search for the location of servers in the CDS. And the next sentence says the CDS can be accessed through DCE RPC. And so it's clear from these passages as well as others that that step one is performed through RPC. And what are the other passages that you would cite for that? So there's also appendix 4627 on page 175 of Lendedman. And this is the second paragraph, kind of in the middle. It says the RPC run time performs such tasks as controlling communications between clients and servers or finding servers for clients on request. And finding servers for clients on request, that is step one, which opposing counsel refers to on appendix 4643. So, again, just because step one, as described on that specific page, doesn't say RPC one way or the other, it doesn't change the fact that there are multiple other descriptions in Lendedman that say that it is performed through RPC. And we can keep going. What's the difference between RPC run time and RPC? I guess maybe in your view there isn't one, but could you explain why that is so? I take it maybe the blue brief didn't really express this in any detail, but I think the gist of their argument is RPC is the remote procedure call that happens between the client and the target. RPC run time is something that is not the remote procedure call itself, but it's perhaps some kind of software that you use to eventually set up an RPC. Sure. They don't quite say it like that, but can you explain how I should think of what is RPC run time, or rather beyond just invoking the acronym RPC? Yeah, so the RPC run time is a particular component of the application client host, and it does a number of things. But I would refer this court to appendix 4644, which this is, again, the same summary of RPC call routing that Vernetics references as its primary argument. And at step three, which is executing the RPC, the only thing that seems to imply that step three is performed through RPC, which I think both parties agree that step three does involve RPC, says with the fully bound handle, the client's RPC run time then directly calls the server process. So it seems to be the fact that the client's RPC run time is the thing that is making the call that makes the communication to RPC. And, again, the board, the standard as to what constitutes sufficient explanation from the board is that the board's reasoning must be reasonably discerned. And this court has said that this court upholds a decision of less than ideal clarity if the agency's path may be reasonably discerned. Given the multiple passages that the board cited, I would argue that the board's decision was of ideal clarity. But even if it isn't, under the substantial evidence standards, the agency's path here can be reasonably discerned. Is there still some pending litigation out there on this expired patent? I'm not familiar with that. It is expired. And so, however, we're within that six-year window of it being asserted. And so that's why Cisco is here to address this. If there are no additional questions from the court, I'll just reiterate that the board's explanations constitute substantial evidence. And mere disagreement in the interpretation of the prior art, that's a question of the scope and content of the prior art, that's clearly reviewed for substantial evidence. The board cited substantial evidence here, and for these reasons, we ask the court to affirm. And I'll yield the rest of my time. Thank you. No one ever loses points for not using up all their time. Thank you. Mr. Kinnear has a little time left. The fundamental problem with my brother's argument is that it conflates the RPC runtime, which is the operating system, with an RPC call. Now, to call attention to 2208, which is the actual right of appeal notice, and what they're saying is the Lindemann rejections explain a query is made by a RPC. Moreover, RPC calls rely upon a well-known authentication algorithm. This is the server challenge. So in order to authenticate the query, the call itself has to be an RPC. The query has to be an RPC. And at 4631, which explains the RPC runtime, it describes it, every RPC client and RPC server is linked with a copy of the RPC runtime. It's a program. It's an operating system. It says it performs multiple tasks. It lists five of them. One of them is searching a directory service. Another one is the RPC. That's the first bullet. So the other thing I think my brother fails to address at all are the statements at 4638, 4640, and 4626, where Lindemann says that an RPC requires the binding handle in order to execute an RPC call. And you only get that after the CDS query is completed. So I think that it's just a fundamental contradiction. Those arguments were made before the board. They were made on appeal here, Your Honor. And they can't have substantial evidence if it is a fundamental contradiction between what they found. And indeed, the very statement here on 4631 that says the RPC runtime can be used to search for the location of servers, binding information, and the directory service CDS. The board relied on that. But that's telling you exactly what my point is, that the CDS query is an antecedent precursor communication that gets the binding information that allows the RPC call. Is there any pending litigation on this patent? There is not, Your Honor. There was a district court litigation, but that was found to be JAMAL and non-infringement a couple of years ago. There is no pending litigation. But as my colleague pointed out, there's still a statute of limitations. So we still have a property right to defend. See, I've exhausted my time. Thank you. Thank you, counsel. The case is submitted.